# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50351 | **DATE** | 12/16/2003 |
| **CASE TITLE** | | BURT vs. WALLS | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached Memorandum Opinion and Order, the court denies Burt's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | DEC 16 2003 date | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | | 12-16-03 date mailed notice | |
| /SEC | courtroom deputy's initials | 03 DEC 16 PM 2:47 U.S. DISTRICT COURT CLERK FILED-WS | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| United States of America ex rel. RONALD E. BURT (#N-60788), Petitioner, v. EUGENE McADORY,[1] Warden, Menard Correctional Center, Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) No. 02 C 50351 |

## MEMORANDUM OPINION AND ORDER

Petitioner, Ronald E. Burt, a prisoner in state custody at Menard Correctional Center,

filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a

careful review of the petition and the parties' briefs, the relevant authorities, and the record, this

court denies Burt's habeas petition in its entirety.

## I.  BACKGROUND

### A.  Procedural Background

On February 5, 1992, Burt was charged in the Circuit Court, Fifteenth Judicial Circuit,

Stephenson County, Illinois with two counts each of first degree murder and armed robbery, in

connection with the shooting deaths of H. Steven Roy and Kevin Muto. On the fourth day of his

jury trial, Burt changed his plea from not guilty to guilty, against the advice of counsel and

---

[1]  Eugene McAdory is currently the Warden at Menard Correctional Center and is thus the proper respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. Therefore, this court substitutes McAdory as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

following an admonishment by the trial court judge. The court accepted this plea, and the jury then found Burt eligible for the death penalty based on the statutory aggravating factor of multiple murders, and also found a lack of mitigating circumstances sufficient to preclude imposition of the death sentence. The court sentenced Burt to death for the murder convictions. Following sentencing, the court rejected Burt's motion to withdraw his guilty plea.

On direct appeal, the Illinois Supreme Court affirmed Burt's convictions and sentence. *See People v. Burt*, 168 Ill.2d 49 (1995) ("*Burt I*"). Burt sought post-conviction relief in state circuit court in the form of a pro se petition followed by an amended petition filed with assistance of counsel. The court rejected these petitions. The Illinois Supreme Court, on post-conviction appeal, denied Burt's requests for relief, (*People v. Burt*, 205 Ill.2d 28 (2001) ("*Burt II*")) and the Supreme Court denied certiorari. *Burt v. Illinois*, 536 U.S. 925 (2002).

Burt filed his petition for habeas corpus with this court on October 17, 2002. On January 10, 2003, former Illinois Governor George Ryan commuted Burt's death sentence to natural life imprisonment without the possibility of parole. No challenges are pending in any court related to this commutation. The commutation has mooted several of Burt's claims. *See* Part III.A, *infra*. On July 3, 2003, respondent, the Warden of Menard Correctional Center (the "State"), filed an answer to the petition, followed by Burt's reply to the answer on August 4, 2003.

### B. Trial and Sentencing Proceedings

Burt does not challenge the statement of facts set forth in the Illinois Supreme Court opinions affirming the trial court. Therefore, this court accepts those facts as presumptively correct. *See* 28 U.S.C. § 2254(e)(1); *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002).

2

In July, 1992, several months prior to trial, Burt's counsel requested a mental fitness evaluation, due primarily to Burt's use of prescribed psychotropic medications. Under instruction of the court, Dr. Donald Pearson, a psychologist, administered a battery of psychological tests and concluded that Burt was fit to stand trial. The trial judge accepted this finding and did not conduct any further inquiry into Burt's fitness. *See Burt II*, 205 Ill.2d at 33.

Evidence adduced at trial established that, in the early morning of January 16, 1992, Burt, along with David Craig and Dannie Booth, a 14-year-old farmhand of H. Steven Roy's, drove to a farm in Stephenson County rented by Roy to collect a debt that Roy owed Booth.[2] *See Burt I*, 168 Ill.2d at 55. During the visit, an argument ensued between Roy and Booth. Roy was shot several times in the back and in the back of the head. *See id.* at 55-56. Kevin Muto, another farmhand of Roy's, arrived at the farmhouse, and was also shot in the back of the head and the back. Burt, Booth, and Craig took several items from the farmhouse, including some frozen meat, a VCR, and some of Roy's personal checks. The owner of the farm and other neighbors discovered the bodies of the two victims later that afternoon.

At trial, the State presented evidence of two separate statements given by Burt in which he admitted that he and Booth both shot Roy and Muto.[3] *Id.* One of these statements, offered to a Stephenson County deputy sheriff, was recorded. On January 24, 1992, Burt gave a third statement to police, claiming that he did not actually shoot Muto and asserting that his initial admissions were made only to protect young Booth and prevent him from taking the blame for

---

[2] The circuit court assigned case numbers 92CF49 and 92CF50 to the trial court proceedings.

[3] The record does not indicate that Craig was a shooter of either victim, but rather that Craig's involvement was limited to driving to the farmhouse and taking several items from the home.

Muto's shooting alone. *Id.* at 57. The State, through a motion *in limine*, successfully persuaded the court to exclude this statement as self-serving and unreliable hearsay. *Id.* Burt asserted that he wished to clarify that the exclusion only applied to the guilt phase of trial and that he could seek to have this evidence reintroduced at the sentencing phase. The court did not specifically rule on that request, but advised Burt and his counsel that the request could be renewed at sentencing. Burt did not attempt to introduce the January 24 statement into evidence at the sentencing hearing. *See id.* The prosecution also offered testimony from a variety of other witnesses, including a deputy sheriff who testified to having found several of Roy's items on Burt's person at the time of his arrest, and a Stephenson County jailor who found additional personal items of Roy's in Burt's possession.

Burt changed his plea from not guilty to guilty after four days of trial. The court admonished him of the consequences of his plea, and Burt's counsel advised him against making this change. Nevertheless, Burt insisted on the plea, and the trial court accepted it. The jury proceeded to find Burt eligible for the punishment of death under Illinois' multiple-murder aggravating factor, and found no mitigating circumstances sufficient to preclude imposition of this sentence. *See Burt I*, 168 Ill.2d at 59-62.

## C. State Court Appellate Proceedings

Burt appealed his conviction and sentence directly to the Illinois Supreme Court. This appeal raised several issues relating to alleged constitutional violations at trial and sentencing, only one of which has been included in the habeas petition. The sole claim from Burt's appeal included in his habeas petition is his claim of ineffective assistance of counsel, due to trial counsel's failure to introduce at sentencing Burt's January 24, 1992 statement denying shooting

4

Muto.[4]  *See id.* at 62-63 (listing issues reviewed on appeal).  On September 21, 1995, the Illinois

Supreme Court affirmed the conviction and sentence with respect to all of the issues presented by

Burt.  *See id.* at 82.  The Supreme Court declined to grant certiorari in Burt's direct appeal.  *Burt*

*v. Illinois*, 517 U.S. 1211 (1996).

Burt then petitioned the state circuit court for post-conviction relief.  The circuit court

denied such relief, and he once again appealed to the Illinois Supreme Court.  In the post-

conviction appeal, Burt set forth several claims of constitutional error, most of which have also

been included in some form in the instant petition.  *See Burt II*, 205 Ill.2d at 36.  Additionally,

Burt asserted claims relating to his fitness to stand trial as well as a due process claim stemming

from the State's alleged withholding of co-defendant Craig's statement potentially exculpating

Burt from the shooting of Muto.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Burt also

pursued his ineffective assistance of counsel claim regarding his trial counsel's failure to

introduce at sentencing the mitigating evidence of his statement denying shooting Muto.  *See id.*

The Illinois Supreme Court found that some of these claims were allegations of statutory

violations and not cognizable on post-conviction review, while it addressed others on the merits,

and affirmed the judgment of the circuit court.  *Id.* at 48.  Burt has now petitioned this court for

habeas relief.

## II.     HABEAS STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

habeas petitioner may be granted a writ of habeas corpus only if the challenged state court

---

[4]  Burt also preserved several general challenges to the Illinois death penalty statute; however, these claims have been mooted due to the commutation of Burt's sentence from death to natural life imprisonment.  *See* Part III.A, *infra*.

decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

Under the "unreasonable application" prong of Section 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 1174 (2003) (unreasonable application means more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002), *citing Williams v. Taylor*, 529 U.S. at 411; *see also Searcy v. Jaimet,* 332 F.3d 1081, 1089 (7th Cir. 2003) (reasonable state court decision must at least minimally comport with the facts and circumstances of the case).

## III.  BURT'S HABEAS CLAIMS

Burt raised twelve claims in his habeas petition and related pleadings. Claims # 1 through # 7(a) challenge proceedings at the guilt and innocence phase of the trial and related findings. Claims # 7(b), # 8, and # 11 challenge events at the death penalty sentencing stage,

while Claims # 9 and # 10 challenge the Illinois death penalty statutory scheme in general.[5] Due to former Governor Ryan's commutation of Burt's death sentence, this court concludes that some of the claims are moot. The remaining claims maintain their viability only to the extent that they challenge the conviction and not the commuted death sentence.

## A. Moot Sentencing Claims

Both prior to as well as since Burt's commutation of sentence in January 2003, the Illinois Supreme Court has issued modified decisions on denial of rehearing in other capital cases. In each case, the Illinois Supreme Court concluded that former Governor Ryan's commutation of a defendant's death sentence rendered moot any capital sentencing claims. *See, e.g., People v. Lucas*, 203 Ill.2d 410 (2002) (commutation removes judicially imposed sentence replacing it with a lesser, executively imposed sentence); *People v. Miller*, 203 Ill.2d 433 (2002) (same). In a denial of an application for a certificate of appealability pursuant to 28 U.S.C. § 2253(c), the United States Court of Appeals for the Seventh Circuit concluded that due to the commutation of a former death row inmate's sentence, the prisoner's habeas claims based on his death sentence were moot. *See Wilson v. Mote*, No. 03-1943, slip op. at 1 (7th Cir. Jun. 18, 2003); *see also Erickson v. McAdory*, Nos. 01-3706 & 01-3851, slip op. at 2 (7th Cir. Oct. 6, 2003).

Accordingly, Burt's habeas claims challenging the Illinois death penalty statutory scheme and his death sentence are moot. He has conceded as much with respect to Claim # 9 (Illinois death penalty statute as violative of Eighth and Fourteenth Amendments to U.S. Constitution

---

[5] The State correctly observes that, with respect to Claim # 7, there is a discrepancy between the petition and the memorandum of law in support thereof. Thus, this court refers to Burt's seventh claim from the petition as Claim # 7(a), while the seventh claim detailed in the memorandum will be referred to as Claim # 7(b).

because it places undue burden of proof on defendant) and Claim # 10 (Illinois death penalty statute violates Eighth and Fourteenth Amendments by not sufficiently minimizing the risk of arbitrarily or capriciously imposed death sentences).

The State asserts that certain other claims are also moot because they address only the death penalty sentencing phase of Burt's trial. Burt asserts a *Brady* violation, based on the State's alleged failure to provide him with a statement of co-defendant Craig that allegedly suggests that Burt did not actually shoot Muto. In his habeas petition, Burt claims that the presentation of this statement in some form "would have been compelling mitigation to dissuade the jury from imposing the death penalty." This is the crux of Burt's *Brady* claim (Claim # 8). As such, this claim is moot because it only challenges the death sentence, and Burt is no longer subject to the death penalty.

The State contends that Burt's claim regarding ineffective assistance of counsel due to the failure to introduce at sentencing Burt's statement in which he denies shooting Muto (Claim # 7(b)) is also mooted by the commutation. As stated in Part I.B, *supra*, the trial court excluded this statement from the guilt portion of Burt's trial; thus, the only purpose of admitting this statement at sentencing would have been to reduce the likelihood of Burt receiving a death sentence. Since Burt's sentence is now natural life imprisonment rather than death, the claim of ineffective assistance of counsel at sentencing is moot.

Finally, the State asserts that Claim # 11 (actual innocence for shooting of Muto) is moot, as Burt contests the death sentence but not the underlying conviction. In Burt's petition, as well as a supplement thereto, he focuses on the effect that newly-discovered evidence in the form of a self-serving affidavit from co-defendant Craig would have on a reasonable juror's likelihood of

8

imposing the death penalty. For the same reasoning applicable to Claims # 7(b) and # 8, this claim is also moot. Accordingly, Claims # 7(b), # 8, # 9, # 10 and # 11 are all denied as moot.

## B.  Procedurally Defaulted Claims

The State argues that a number of Burt's claims have been procedurally defaulted, and, as such, should not be reviewed by this court. Prior to a federal court's substantive review of a petitioner's habeas claims, the petitioner must have exhausted all of his state remedies. *See* 28 U.S.C. § 2254(b)(1). Additionally, a petitioner must fairly present his federal claims to the appropriate state court, because any claim not fully and fairly presented to the state's highest court is deemed procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Mahaffey*, 294 F.3d at 914-15. Also, procedural default occurs when the state court did not address a petitioner's federal claim because the petitioner failed to meet independent and adequate state procedural requirements. *See Stewart v. Smith,* 536 U.S. 856, 860 (2002). Lastly, a federal court may not grant habeas relief on a procedurally defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Anderson v. Cowan,* 227 F.3d 893, 899-900 (7th Cir. 2000).

## 1.  Claim # 4 (Counsel's Failure to Inform Burt of his Right to a Fitness Hearing)

The parties do not dispute that Claim # 4 (trial counsel's failure to inform Burt of his right to a fitness hearing) is procedurally defaulted. In addition, Burt has not argued cause and prejudice or a fundamental miscarriage of justice, which he would have had to do in order to circumvent the procedural default. Therefore, this claim is procedurally defaulted and will not be reviewed by this court.

### 2. Claim # 7(a) (Counsel's Refusal to Allow Burt to Testify)

Burt's claim of ineffective assistance of counsel due to trial counsel's refusal to allow Burt to testify in his own defense (Claim # 7(a)) is also procedurally defaulted. Burt did not raise this argument in either *Burt I* or *Burt II*. He first presented this claim in his amended petition for post-conviction review with the state circuit court; however, he did not appeal this issue to the Illinois Supreme Court in his post-conviction appeal.

In order to avoid procedural default, a petitioner must fully and fairly present his claims throughout the state's established appellate process. *See Boerckel*, 526 U.S. at 848. Since Burt did not pursue Claim # 7(a) in either *Burt I* or *Burt II*, he did not give the Illinois courts a fair opportunity to review his argument, and has procedurally defaulted with respect to this claim. In addition, he has not argued cause and prejudice or a fundamental miscarriage of justice. Therefore, this court will not consider this claim on the merits.

### 3. Claims # 5 and # 6 (Due Process, Equal Protection and *Ex Post Facto* Violations due to Alleged State Law Errors)

Burt presents two additional claims relating to the *Burt II* court's application of an incorrect pleading standard and interpretation of a state statute regarding fitness hearings for defendants on psychotropic medications (Claims # 5 and # 6). The State argues that these two claims are procedurally defaulted because Burt presents them for the first instance in his habeas pleadings. Generally, a claim presented initially in a habeas petition is deemed procedurally defaulted because petitioner has not given the state courts a full and fair opportunity to review the claims prior to collateral habeas review. *See Boerckel*, 526 U.S. at 844-45; *Spreitzer v. Schomig*, 219 F.3d 639, 645-46 (7th Cir. 2000).

Burt asserts that he could not have brought these claims prior to his instant request for relief as they arose only after the Illinois Supreme Court allegedly wrongly interpreted state law in the post-conviction appeal. Burt cites no support for his proposition that this constitutes cause and prejudice for excusing the procedural default. His argument is that the *Burt II* court deprived him of his due process and equal protection rights and subjected him to unconstitutional *ex post facto*, due process and equal protection violations by applying the current state statute and pleading standard, rather than that which existed at the time of his state court trial. The decision that Burt challenges, *People v. Mitchell*, 189 Ill.2d 312 (2000), was decided prior to the submission of Burt's reply brief to the *Burt II* court; thus, his arguments against *Mitchell*'s application could have been set forth before the Illinois Supreme Court in a reply brief and a petition for rehearing but were not. Because Burt did not give the Illinois Supreme Court an opportunity to address these claims, he has procedurally defaulted them.

Even if this court overlooked the procedural default, Burt's contention that the Illinois Supreme Court erred in its application of Illinois law does not constitute a cognizable habeas claim. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law"); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002). The Illinois Supreme Court decided appropriately by applying the Illinois law existent at the time of Burt's post-conviction appeal, even though that law may have differed from the law in effect at the time of his trial. *See Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711 (1974). Thus, it did not err by applying *Mitchell*. Even if some type of state law error occurred, this court may not review state law errors, unless they resulted in

the deprivation of a constitutional right.[6] *Mahaffey*, 294 F.3d at 914. As this court will explain in further detail in Part III.D, *infra*, the Illinois Supreme Court's decision in *Burt II* did not deprive Burt of his constitutional rights.

Finally, even if this court were to review Burt's *ex post facto* and related claims substantively, the Illinois Supreme Court's actions did not amount to due process, equal protection or *ex post facto* violations. The primary case that Burt cites as support for his due process claim is *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). In *Logan*, the appellant was denied a hearing on an employment discrimination claim due to a state agency's failure to handle his claim in the statutorily prescribed time frame. *See id.* at 426-27. The Supreme Court held that this violated due process, as that clause "grants the aggrieved party the opportunity to present his case and have its merits fairly judged." *Id.* at 433.

This is not what has transpired in Burt's situation; his case has been heard and judged fairly twice by the Illinois Supreme Court. Burt's position may have been weakened by the *Mitchell* decision; however, the Illinois Supreme Court's decision in *Burt II* did not take away Burt's cause of action. Therefore, the *Burt II* court's decision was not an objectively unreasonable application of *Logan*.

Furthermore, Burt's contention that the court violated his due process and equal protection rights, by not providing him and his counsel with notice of a change in Illinois law concerning fitness hearings for defendants taking psychotropic medications, is without merit. When reviewing a lower court's decision, a reviewing court must generally apply the law in

---

[6] The state's court's substantive determination regarding Burt's mental competency and fitness to stand trial will be discussed more fully in Parts III.C and III.D, *infra*.

effect at the time the decision is rendered. *See Bradley*, 416 U.S. at 711; *see also U.S. v. Fitzgerald*, 545 F.2d 578, 581 (7th Cir. 1976). In the instant case, the *Burt II* court correctly applied *Mitchell*, the law in effect at the time its decision was rendered. *Mitchell* corrected a previously faulty interpretation of Illinois law. *See Mitchell*, 189 Ill.2d at 330. This correction may have had an adverse effect on Burt's case; however, the Illinois Supreme Court carefully followed the appropriate state statute and case law and no constitutional violation occurred.

Regarding Burt's *ex post facto* argument, an unconstitutional *ex post facto* violation primarily occurs when a state "enact[s] any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981); *see also U.S. v. Withers*, 128 F.3d 1167, 1169-70 (7th Cir. 1997) (*ex post facto* not applicable if new law does not alter definition of criminal conduct or impose harsher punishment). The alleged erroneous decision by the Illinois Supreme Court involved neither the criminalization of previously legal conduct nor the imposition of any additional punishment upon Burt.

The essence of Burt's *ex post facto* claim is that the *Burt II* court applied an incorrect version of 725 ILCS 5/104-21(a). This statute deals with the mental fitness of defendants taking psychotropic medications. Statutory amendments subsequent to Burt's trial removed the presumption that a defendant's use of psychotropic medications created a *bona fide* doubt as to that defendant's fitness to stand trial. *See* 725 ILCS 5/104-21(a). The amendments to this statute and subsequent related cases affected neither the criminality of Burt's acts nor the punishment for those acts, as would be required to prove an *ex post facto* clause violation. *See Weaver*, 450 U.S. at 28. As such, the Illinois Supreme Court's decision did not subject Burt to an unconstitutional

*ex post facto* violation, and was neither contrary to nor an unreasonable application of *Weaver*. For the reasons described above, Claims # 5 and # 6 fail.

### C.  Actual Innocence Claim

In Claim # 11, Burt asks this court to consider an affidavit of co-defendant Craig, taken on September 30, 2002, in which Craig states that, in his observation, Burt could not have fired any of the shots that killed Muto. Burt maintains that this proves his actual innocence for the shooting of Muto. This affidavit is very similar to testimony Craig gave at co-defendant Booth's sentencing hearing, which was presented and considered on the merits by the Illinois Supreme Court during Burt's post-conviction appeal. *See Burt II*, 205 Ill.2d at 45-46. In briefs that Burt submitted to the *Burt II* court, he contended that evidence of Craig's allegedly exculpatory statements would have "been compelling mitigation to dissuade the jury from imposing the death penalty." He did not argue that this evidence would have likely caused the jury to return a verdict of not guilty.

Furthermore, in Burt's habeas petition, he asserts that this evidence "shows that it is more likely than not that no reasonable juror would have found him guilty of the death penalty beyond a reasonable doubt." He does not contend that this evidence would have affected his conviction for the two shootings. Burt's objective in presenting the affidavit is to challenge the imposition of the death penalty. Because Burt is no longer under a sentence of death, this claim is moot.

Even if Burt arguably is contending that he is presenting this evidence to challenge his conviction, he does not qualify for the "extremely rare" and "extraordinary" fundamental miscarriage of justice exception. *See Schlup v. Delo*, 513 U.S. 298 (1995); *Gomez v. Jaimet*, 2003 WL 22805702, at * 4 (7th Cir. 2003). A claim of actual innocence is not a freestanding

claim cognizable on federal habeas review. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993). This exception, however, can be a gateway for federal habeas courts to review procedurally defaulted claims. *See id.* at 404 (actual innocence claim "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits").

In this instance, there is no underlying procedurally defaulted claim, because the claims that Burt wishes this court to consider, a *Brady* claim (Claim # 8) and an ineffective assistance of counsel claim (Claim # 7(b)), were both reviewed on their merits and rejected by the Illinois Supreme Court. Therefore, there is no basis for this court to consider an actual innocence claim. Burt does not present any procedurally defaulted claims that would trigger application of the extremely limited actual innocence doctrine. *See id; see also Gomez*, 2003 WL 22805702, at * 5. Finally, the 'new' evidence that Burt sets forth is simply insufficient. It is not actually new, and it does not reach the level of proof required in *Schlup*, 513 U.S. at 327. For all of these reasons, Burt's claim of actual innocence (Claim # 11) is denied.

### D. Remaining Claims: Claims Relating to Fitness Hearing

A substantial portion of Burt's habeas arguments focus on the lack of a full hearing to determine Burt's mental fitness to stand trial. Claims # 1 through # 6 all assert constitutional violations pertaining to this issue. As stated in Part II.B, *supra*, Burt has procedurally defaulted Claim # 4 (denial of due process and effective assistance of counsel due to counsel's failure to inform him of statutory right to fitness hearing), as well as Claims # 5 and # 6. This leaves three claims to be addressed, Claims # 1, # 2, and # 3. These arguments all share the same factual basis and are all based upon the absence of a competency hearing.

**1. Denial of Due Process by Trial Court's Failure to Conduct Fitness Hearing**

In Claim # 1, Burt asserts that he was denied due process of law when the trial court failed to hold a hearing on his fitness to stand trial, plead or be sentenced, even though there was, allegedly, reasonable cause to believe he was not competent to stand trial. In *Burt II*, the Illinois Supreme Court did not actually consider the merits of this particular claim. *See Burt II*, 205 Ill.2d at 37. Nevertheless, the court explained the development of this area of law under Illinois law and the case law that likely led Burt to present this claim.

At one point, the Illinois Supreme Court had equated a defendant's ingestion of psychotropic drugs with a *bona fide* doubt of fitness to stand trial. *See People v. Nitz*, 173 Ill.2d 151, 160 (1996); *People v. Gevas*, 166 Ill.2d 461, 470 (1995). Thus, a defendant's use of psychotropic medication automatically raised a *bona fide* doubt about competency, and if the defendant did not receive a fitness hearing prior to trial, this alone was equivalent to a due process violation under Illinois law. *See Nitz*, 173 Ill.2d at 161. The Illinois Supreme Court corrected itself and overruled this line of decisions, finding that "this court's prior determination that the legislature equated the ingestion of psychotropic mediation with a *bona fide* doubt of defendant's fitness was simply erroneous." *Mitchell*, 189 Ill.2d at 330. Thus, standing alone, the lack of a fitness hearing is merely a statutory issue. It does not constitute a due process violation cognizable in state post-conviction review, and does not equal such a violation on collateral federal review either. *See id.* at 328-29; *see also* 28 U.S.C. § 2241(c)(3) (writs appropriate only for custody in violation of laws of the United States).

The *Burt II* court then concluded that, since Burt's right to a fitness hearing was statutory and not constitutional, he could only challenge the failure to receive a fitness hearing in the

context of an ineffective assistance of counsel claim. *See Burt II*, 205 Ill.2d at 37. This claim is not cognizable on collateral review because the Illinois Supreme Court applied state law relating to competency hearings. Federal habeas review lies only for violations of federal constitutional law; it is not available for redress of potential errors of state law. *See Estelle*, 502 U.S. at 67-68; *Lewis*, 497 U.S. at 780 ("federal habeas corpus relief does not lie for errors of state law"); *Dellinger*, 301 F.3d at 764.

In fact, the Seventh Circuit Court of Appeals has dealt with the primary statute at issue in the instant case, 725 ILCS/5-104-21(a). *See In re Page*, 170 F.3d 659, 660-62 (7th Cir. 1999). In *Page*, the Seventh Circuit addressed claims relating to an incorrect interpretation of this statute, and reasoned that a defendant is not entitled to an "earlier, erroneous interpretation" of state law. *See id.* at 662; *see also Neal v. Gramley*, 99 F.3d 841, 846 (7th Cir. 1996), *citing Estelle*, 502 U.S. at 67-68 (errors of state law in state judicial proceeding do not deny petitioner due process). Because any error that may have been committed with respect to this claim involves only state law, Claim # 1 is denied.

## 2. Ineffective Assistance of Counsel by Failure to Request Fitness Hearing

Next, Burt argues that he did not receive due process of law and effective assistance of counsel as guaranteed by the Sixth Amendment at trial, plea, and sentencing because his trial counsel did not request a fitness hearing (Claim # 2). To the extent that this claim challenges events at the sentencing stage of Burt's trial, it is moot; however, this court reviews Claim # 2 as it relates to other aspects of the trial. The Illinois Supreme Court addressed this claim on the merits and found that Burt did not meet the prejudice prong of *Strickland v. Washington*, 466

U.S. 668 (1984); thus, he did not prove an ineffective assistance of counsel violation. *See Burt II*, 205 Ill. 2d at 44.

To establish an ineffective assistance of counsel claim, Burt must prove two components: first, that counsel's performance was deficient, consisting of "errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,"; second, that these errors prejudiced the defense, by being "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. If Burt is unable to demonstrate both *Strickland* prongs, his ineffective assistance claim will not succeed. *Id.* The inquiry before this court is whether the state court made a decision contrary to well-established Supreme Court law, or unreasonably applied the relevant law to the facts of this case. *See Williams*, 529 U.S. at 404-05.

As evidenced in his habeas petition and the state court decisions, Burt has a history of family problems and lower-than-average intelligence. *See Burt I*, 168 Ill.2d at 61-62. Burt has also submitted extensive records of his use of prescribed psychotropic medications throughout the trial proceedings.[7] He also points to other psychiatric and psychological reports that he claims should have caused his counsel and the trial court to find a *bona fide* doubt as to his fitness to stand trial.

The trial court, at the request of Burt's attorneys, ordered a fitness evaluation by Dr. Donald Pearson, a psychologist. Dr. Pearson ran a battery of tests and concluded that Burt was

---

[7] It is not clear exactly which medical records were submitted to the trial court; however, at a minimum, the trial court reviewed Dr. Pearson's report, heard testimony from at least one additional psychologist, and was aware of Burt's use of psychotropic medication. *See Burt I*, 168 Ill.2d at 61-62; *Burt II*, 205 Ill.2d at 38, 41-42. Certain records were definitely not before the trial court, such as Dr. Lyle Rossiter's report, as that report was not produced until December 1997.

fit to stand trial, and provided a copy of his report to the court. After reviewing this report, the

trial court did not order any further inquiries into Burt's fitness. *See Burt II*, 205 Ill.2d at 33.

Burt's lawyers did not make any additional requests for a fitness hearing. Burt also focuses on a

report by another psychologist, Dr. Linda Wetzel, who concluded that he suffered from some

form of brain impairment, but did not render a specific opinion on competency to stand trial. In

addition, Burt describes an incident during jury selection in which he felt 'burnt out' because of

his medications and requested a continuance. The court noted the request, but observed that Burt

seemed fairly alert, and suggested that Burt renew his request if he truly could not stay awake.

*See id.* at 41-42. Burt also characterizes his decision to change his plea to guilty in the midst of

trial as evidence of his mental incompetency. He contends that these facts, among others,

demonstrate that his attorneys were aware of his mental condition, and that their failure to

request a fitness hearing substantially prejudiced him.

On post-conviction appeal, the Illinois Supreme Court held that "defendant has failed to

establish that he suffered prejudice under *Strickland* for his attorneys' failure to reopen an inquiry

into his fitness." *Burt II*, 205 Ill.2d at 44. Thus, according to the Illinois Supreme Court, even if

Burt established that his trial counsel's assistance was somehow deficient, he did not suffer

prejudice as a result of this representation. A defendant must demonstrate both prongs of

*Strickland* to prevail on an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at

687.

The proper inquiry for prejudice in the context of fitness hearings is whether there is a

reasonable likelihood that, had the requested fitness hearing been conducted, the defendant

would have been found unfit to be tried, or, simply put, whether defendant was in fact fit to stand

trial. *See Mitchell*, 189 Ill.2d at 334; *see also Eddmonds v. Peters III*, 93 F.3d 1307, 1317-18

(7th Cir. 1996). The inquiry is not whether a hearing would have been held, since the mere

holding of a competency hearing does not necessarily mean that a defendant would be found

unfit to stand trial. *See Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998) (fitness

hearing could result in finding of unfitness, but other outcomes "equally plausible").

The basic test for determining a defendant's mental competency is whether defendant

enjoys "sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding-- and whether he has a rational as well as factual understanding of the proceedings

against him." *Dusky v. United States*, 362 U.S. 402 (1960). This is a much narrower concept

than whether or not a defendant suffers from some sort of mental instability or disturbance. *See*

*Gosier v. Welborn*, 175 F.3d 504, 509 (7th Cir. 1999).

The Illinois Supreme Court, in *Burt II*, reasonably concluded that Burt had a rational and

factual understanding of the proceedings against him. First, the Illinois Supreme Court relied on

the report submitted by Dr. Pearson, which reflected Burt's competency to stand trial. Next, it

cited testimony from the trial court judge, who indicated that Burt generally conducted himself

very well and was very attentive throughout the proceedings. In addition, the Illinois Supreme

Court noted the trial court's lengthy exchange with Burt before accepting his plea, demonstrating

that, in all likelihood, Burt entered the plea knowingly and voluntarily. *See Burt II*, 205 Ill.2d at

41-42; *see also Godinez v. Moran*, 509 U.S. 389, 396-402 (1993) (discussion of due process

requirements for accepting guilty plea).

Burt's assertion that the Illinois Supreme Court violated *Pate v. Robinson*, 383 U.S. 375

(1966), is inaccurate, since the circumstances in this case demonstrate that the court reasonably

20

found that no *bona fide* doubt as to Burt's fitness for trial existed. In *Pate*, the court did not order

any kind of fitness evaluation, even when four defense witnesses expressed the opinion that

petitioner was insane. *See Pate*, 383 U.S. at 383. There were no equivalent opinions expressed

in the instant matter.

The evidence supporting Burt's proposition that a *bona fide* doubt regarding his

competency to stand trial existed is not of the same caliber as that presented in *Pate*. The

primary additional supporting material that Burt offered to the *Burt II* court consisted of a report

of Dr. Lyle Rossiter, a psychiatrist. Several years after trial, using case records along with Burt's

medical and psychological records as his guide, Dr. Rossiter concluded that "a fitness

determination was indicated due to defendant's psychiatric history and use of psychotropic

medications." *Burt II*, 205 Ill.2d at 44. This was presented in his post-conviction filing. The

Illinois Supreme Court had no obligation to accept Dr. Rossiter's post-trial findings.

As such, the Illinois Supreme Court reasonably applied *Strickland* in the context of this

claim. It reviewed the evidence submitted regarding Burt's mental fitness. Based upon this

review, it determined that Burt did not establish prejudice by the absence of a fitness hearing,

because there was no reasonable probability that he would have been found unfit to stand trial if

such a hearing had been held. *See id.* at 44; *see also Strickland*, 466 U.S. at 694-95. This court

cannot say that the Illinois Supreme Court's decision on this matter was objectively

unreasonable. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) ("*unreasonable* application of

federal law [is] different from an *incorrect* application") (emphasis in original), citing *Williams*,

529 U.S. at 411; *see also McFowler v. Jaimet*, 349 F.3d 436, 455 (7th Cir. 2003) ("AEDPA

demands appropriate deference" to state courts, and federal court "may not use the writ of habeas

to effectively overrule" state court simply because of disagreement with state court's decision ). Thus, according to the standard of review mandated by the AEDPA, this court denies Claim # 2.

### 3. Denial of Due Process When Circuit Court Failed to Conduct Hearing While Aware of *Bona Fide* Doubt of Competency

In Claim # 3, Burt sets forth a related due process claim. He contends that the trial court violated his due process rights by neglecting to hold a fitness hearing when the court was aware of information sufficient to create a *bona fide* doubt as to his competency. The Illinois Supreme Court held that no *bona fide* doubt existed; therefore, no due process violation occurred. *See Burt II*, 205 Ill.2d at 45. The court reasoned that no significant developments occurred between Burt's initial fitness evaluation and trial which would have alerted the circuit court of the need for a full competency hearing. *See id.* at 45. Thus, according to the *Burt II* court, Burt's due process rights were not violated. *See id.* at 44-45. That decision is consistent with the facts and circumstances of this case and, as such, a reasonable application of clearly established Supreme Court precedent. *See Searcy*, 332 F.3d at 1089.

The Illinois Supreme Court was not required to cite applicable federal case law on the issue of Burt's competency, as long as neither its reasoning nor the result conflicted with Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002). The *Burt II* court, without citing applicable Supreme Court precedent, reasonably determined that Burt met the test for mental competency as set forth in *Dusky*. *See* 362 U.S. at 402. *Dusky* requires that a defendant have "sufficient present ability to consult with his lawyer with a rational degree of understanding," along with "a rational as well as factual understanding of the proceedings against him." *Id.* The Illinois Supreme Court found that Burt regularly consulted with his counsel and the trial court. *See Burt II*, 205 Ill.2d at 42-43. It also determined that he repeatedly indicated his

22

understanding of the proceedings throughout the trial, and that the trial court accepted his guilty plea only after a lengthy exchange to insure that Burt comprehended the consequences of his plea. *See id.* at 41-43.

These findings demonstrate that the Illinois Supreme Court reasonably determined that no *bona fide* doubt of Burt's fitness existed, and, as such, the decision was not an unreasonable application of clearly established Supreme Court precedent. *See Searcy*, 332 F.3d at 1089; *Hammer v. Karlen*, 342 F.3d 807, 810 (7th Cir. 2003) (state court decision must be at least "minimally consistent" with case's particular circumstances) (internal citations omitted). Therefore, this court denies Burt's request for habeas relief under Claim # 3.

### E.   Evidentiary Hearing Request

Finally, Burt requests an evidentiary hearing to further develop his claims. He does not specify which claims he would be able to further develop if such a request were granted. Under 28 U.S.C. § 2254(e)(2), if the petitioner has failed to develop the factual basis of a claim in state court proceedings, the federal court "shall not hold" an evidentiary hearing unless the habeas petitioner can show that:

(A) the claim relies on-

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; *or*

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; *and*

(B) the facts underlying the claim would be sufficient to establish by clear and convincing

evidence that but for constitutional error, no reasonable factfinder would have found the

applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

Burt asserts that, since the alleged absence of a well-developed factual record is not due

to any lack of due diligence on his part, pre-AEDPA standards rather than section 2254(e)(2)

should apply to this court's decision whether to grant an evidentiary hearing. *See Williams*, 529

U.S. at 432 (failure to develop factual basis of claim is not established unless there is some lack

of diligence attributable to petitioner or petitioner's counsel); *Burris v. Parke*, 116 F.3d 256, 258-

59 (7th Cir. 1997). Even if this court were to agree that a lack of factual development, if any,

should not be attributed to Burt or Burt's counsel's deficiency, Burt has not shown good cause as

required under Rule 6(a) of the Rules Governing Section 2254 cases.

In this instance, Burt has not made "specific factual allegations ... show[ing] reason to

believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is

entitled to relief." *Bracy v. Gramley,* 520 U.S. 899, 909 (1997), *citing Harris v. Nelson*, 394

U.S. 286, 300 (1969). Burt has not adequately shown, as required under *Harris*, that his

confinement is illegal. *See Harris*, 394 U.S. at 300. Since Burt has not met the requirements for

application of pre-AEDPA evidentiary hearing standards, this court must apply section

2254(e)(2) to Burt's case.

Burt does not meet the high standards for granting hearings as set forth in section

2254(e)(2). Even if Burt could meet section 2254(e)(2)(A)'s requirements, it is extremely

unlikely that he could comply with section 2254(e)(2)(B), that these 'new' facts would establish

by clear and convincing evidence that no reasonable juror would have found him guilty. He offers minimal new facts to prove his case, mainly a self-serving affidavit from Craig, which again relates only to sentencing, not to guilt. It appears that the evidence he sets forth regarding his fitness for trial was before the *Burt II* court and fully considered by that court; no additional facts on this matter have been produced. Burt developed these claims in state court, even without evidentiary hearings. Some of the claims Burt would like to develop further are now moot, such as his *Brady* claim. Thus, this court denies Burt's request for discovery or an evidentiary hearing.

## CONCLUSION

For the reasons stated above, this court denies Burt's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [R. 11].

**E N T E R:**

**JUDGE PHILIP G. REINHARD**
**UNITED STATES DISTRICT COURT**

**DATED:** December 16, 2003

# United States District Court
## Northern District of Illinois
### Western Division

| | |
|---|---|
| United States of America ex rel.<br>Ronald E. Burt | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 02 C 50351 |
| Jonathan R. Walls | |

☐  Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☑  Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the court denies Burt's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

FILED-WD
03 DEC 16 PM 2:47
CLERK
U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 12/16/2003

Susan M. Wessman, Deputy Clerk